FILED
UNITED STATES DISTRICT
DISTRICT OF NEW MEXICO

00 NOV 13 AM 11: 24

CLERK-SANTA FE

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ROBERT STARKS,

        Plaintiff,

vs.                                CV 98 00630 JC/WWD ACE

RANDOLPH "DUKE" WHITE, WILLIAM LOGAN,
DAVE CORDOVA, AND OTHER UNKNOWN AND
SIMILARLY SITUATED PERSONS ACTING IN
CONCERT WITH THE ABOVE NAMED PARTIES,

        Defendants.

## PLAINTIFF-COUNTERDEFENDANT ROBERT STARKS' REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff-Counterdefendant Robert Starks ("Plaintiff Robert Starks"), by and through the undersigned counsel, submits the following Requested Findings of Fact and Conclusions of Law pursuant to the Call of the Calendar served on October 10, 2000. Plaintiff reserves the right to file amended Requested Findings and Conclusions following trial on the merits.

1.    <u>Plaintiff's Requested Findings on Trespass, Damages and Permanent Injunctive Relief.</u>

    1.1   Jurisdiction is with this Court pursuant to 28 U.S.C. §§ 1332(a) and 1391.

    1.2   Plaintiff Robert Starks (Plaintiff Starks) was conveyed title to the Ute Mountain Ranch described on Exhibit A attached, on January 5, 1995 by warranty deed recorded on January 11, 1995 in Book A-253, Page 753-757 (Ranch).

    1.3   The boundaries of the Ranch are fully described on Exhibit A attached hereto.

1.4     The Ranch consists of approximately 14,348 deeded acres. No dwelling or similar structures are located on the Ranch.

1.5     Title is held subject to that certain "Scenic Easement" delivered by a predecessor in title, Public Service Company of New Mexico (PNM) to the United States Department of the Interior, Bureau of Land Management (BLM) dated March 14, 1980, and filed for record in Book M-76, Page 443-447, Taos County, New Mexico (Scenic Easement). The Scenic Easement is described generally as a strip of land contiguous with the western boundary of the Ranch and the centerline of the Rio Grande River and approximately 825 feet wide. Title is also held subject to the encumbrances and claims of easement expressly identified on Exhibit A.

1.6     The Ranch is bounded on the west by the centerline of the Rio Grande, on the south by the United States, Department of Interior, Bureau of Management (BLM) land and on the north by the state line of Colorado and a Colorado County Road commonly called the "state line road".

1.7     At the time of acquisition of the Ranch by Plaintiff Starks, the Ranch was fenced along the southern boundary.

1.8     Shortly after acquisition of the Ranch, Plaintiff Starks discovered evidence of trespassing, poaching and slaughter of wildlife on the Ranch.

1.9     To protect the Ranch, Plaintiff Starks, at considerable expense, constructed a wire fence with a locked gate on the northern boundary of the Ranch.

1.10    Defendant, Randolph "Duke" White (Defendant White) has asserted a claim to the Ranch adverse to the title of Plaintiff Starks.

1.11   Defendant White has cut the northern fence to gain access to the Ranch on numerous occasions and indicated his intent to continue to damage the fence and enter onto the Ranch without permission of Plaintiff Starks.

1.12   Defendant White's entry into the Ranch constituted an unauthorized entry into the land of Plaintiff Starks.

1.13   Due to the actions of Defendant White and his assertion of this right to trespass, at will, to damage the fences on the Ranch, at his pleasure, the value of the Ranch has sustained a diminution in value of approximately $570,000.00, in addition to the costs and repairs to fences that have been destroyed or cut by Defendant White.

1.14   The conduct of Defendant White has caused Plaintiff Starks to lose a sale of the Ranch which would have resulted in a substantial profit.

1.15   Plaintiff Starks has incurred considerable expenses related to making improvements to the Ranch for the purpose of protecting and attracting wildlife.

1.16   Due to the actions of Defendant White and his assertion of this right to trespass, at will, to damage the fences on the Ranch, at his pleasure, Plaintiff Starks will suffer further damages due to the Defendant White's destruction of the improvements.

2.   <u>Plaintiff's Requested Findings in Defense of Defendant White's Counterclaim</u>.

2.1   A prior owner of the Ute Mountain Ranch, PNM expressly granted a Scenic Easement over the western boundary of the Ute Mountain Ranch to the BLM in 1980.

2.2   PNM neither granted nor reserved an express or implied right of access over the Ute Mountain Ranch in favor of the public when it granted the Scenic Easement.

2.3    No unity of title exists between the BLM land south of Ute Mountain Ranch and the Ranch itself.

2.4    The Scenic Easement provides for certain limited rights, in favor BLM.

2.5    The granting of the Scenic Easement was for the purposes stated in the Scenic Easement and such grant did not create a public access easement over any portion of the Ranch outside the boundary of the Scenic Easement. The Scenic Easement granted to BLM the right to permit the public to walk on, and/or fish from the land contained within the metes and bounds description of the Scenic Easement only.

2.6    The Scenic Easement was not intended to provide nor does it expressly or impliedly grant public access across Plaintiff's Ranch to the area of land contained within the metes and bounds description of the Scenic Easement.

2.7    BLM asserts no claim of public access, public highway or public prescriptive easement over the Ranch or routes within the Ranch to access the Scenic Easement.

2.8    BLM has not maintained any routes within the Ranch as public access routes.

2.9    The Scenic Easement over the western boundary of the Ranch lies within the area designated by BLM as wild and primitive.

2.10   Uncontrolled access by the public to the Scenic Easement would be inconsistent with the expressed federal policy of designating that area for preservation as wild and primitive.

2.11   North of the Ute Mountain Ranch a Colorado County Road commonly called the "state line road" provides public access to the Scenic Easement and Rio Grande River Gorge, as does Colorado County Road G, Seminole Rd., Piute Rd., Tejon Trail and County Road B, among others.

South of the Ute Mountain Ranch designated U.S. Forest Service roads, Taos County roads and BLM roads provide public access to the Scenic Easement and Rio Grande Gorge.

2.12   The Taos County Clerk's records contain no recorded grant of right-of-way or easement over Ute Mountain Ranch for a public road to any federal, state or local public body.

2.13   The New Mexico State Highway Department records for state and county roads in Taos County show no public roads, routes or trails are claimed and maintained by any public body over the Ute Mountain Ranch.

2.14   The Sangre de Cristo Grant Survey prepared by the Surveyor General's Office in 1880 shows no roads within the Ute Mountain Ranch.

2.15   The routes or trails claimed by Counterclaimant White to be historical roads or trails are not of sufficient age to be classified as historical aboriginal roads or trails, nor is there reliable evidence of maintenance by a public body over time.

2.16   Since 1980, the adjacent owner and neighbor has observed no evidence of construction or maintenance of any road within the Ute Mountain Ranch boundaries.

2.17   Prior to Stark's purchase of the Ute Mountain Ranch, the Ranch was unfenced except along the southern boundary adjacent to public lands.

2.18   The unfenced area of the Ranch is vast, remote, rough, open range and mountainous terrain without any dwellings or residences closer than five miles from the Rio Grande River Gorge and north and east of the Ranch.

2.19   The nearest neighbors who live over five miles from the Rio Grande River Gorge could not see anyone who might use the Ranch Road to the Rio Grande River Gorge.

2.20   During the time White claims to have used the Ranch Road to the Rio Grande River Gorge, he did not hear of anyone restricting movement on the Ranch, did not encounter anyone who told him he should not be on the land, and received no protests from any owner objection to his going on the land.

2.21   During ownership of the Ranch by Hickory Spinners, Inc. from at least 1964 to 1977, it was common knowledge that area residents were permitted to cross the unfenced Ute Mountain Ranch lands to fish, picnic, sight-see and hike as a neighborly accommodation.

2.22   During ownership of the Ranch by Naniloa Investment Co. Ltd. from 1993 to 1995, it was common knowledge that area residents were permitted to cross the unfenced Ute Mountain Ranch lands to fish, picnic, sight-see and hike as a neighborly accommodation.

2.23   Any use by the public of the Ranch Road to the Rio Grande River Gorge was sporadic, occasional and for recreational purposes only.

2.24   Starks constructed a fence around the Ute Mountain Ranch in July 1996 to keep White and other trespassers from his property, and planted vegetation in certain areas of the Ute Mountain Ranch to help return it to its native state.

2.25   The construction of the fence withdrew the prior Ute Mountain Ranch owners' permission to allow public access as a matter of neighborly accommodation.

All requested Findings of Fact which are in consistent with the foregoing are hereby denied.

## CONCLUSIONS OF LAW

1.   Plaintiff, Robert Starks, is the owner of the Ranch being the real property located in Taos County, New Mexico and described on Exhibit A attached (Ranch).

2. Plaintiff, Robert Starks, is the owner of the Ranch, free and clear of any claim of the Defendant, White.

3. Defendant White's unauthorized entry onto the Ranch constitutes a trespass.

4. Without the issuance of a permanent injunction, Plaintiff has no adequate remedy at law to prevent the continued trespass and damage to the Ranch.

5. Defendant White must be permanently enjoined from entering onto the Ranch for any purpose whatsoever. Any violation of this injunction should result in a minimum liquidated damage of $5,000.00, provided however, if actual damages exceed this amount, Plaintiff should be entitled to an award of the actual damages incurred.

6. Defendant White must be further enjoined from assisting others in any other judicial proceeding in this Court or any New Mexico court from asserting any known or unknown claims of interest in the Ranch adverse to Robert Starks. Such prohibited assistance should include all monetary payments or locating or preparing witnesses or documentary evidence adverse to Plaintiff.

7. Defendant White should be barred and forever estopped from having or claiming any right, title or interest in the Ranch adverse to Robert Starks and his title to the Ranch, including, without limitation, any right or claim of right to pass over or to enter the Ranch for any purpose whatsoever. Plaintiff's title to the Ranch, as against Defendant White should be forever quieted and set at rest as against any claims of Defendant White, his successors and assigns.

8. Defendant White should be permanently enjoined from entering onto the Ute Mountain Ranch outside the boundaries of the Scenic Easement and onto any ranch road, route or trail.

9. Plaintiff is a bona fide purchaser under New Mexico's recording statutes and owner in fee simple of the Ute Mountain Ranch.

10. No roads within the Ute Mountain Ranch are public highways or have been dedicated to a public body by grant or implied dedication.

11. The recorded Scenic Easement granted to BLM creates no express or implied public roads over the Ute Mountain Ranch.

12. The recorded Scenic Easement granted to BLM did not reserve an implied easement of necessity.

13. Upon the grant of the recorded Scenic Easement to the BLM, no necessity was created to pass over any other portion of the Ute Mountain Ranch to reach the Rio Grande River Gorge due to available public roads accessing the Scenic Easement and Gorge north and south of the Ranch.

14. The evidence of sporadic use of routes within the Ute Mountain Ranch by members of the public for fishing, hiking, berry picking, picnicking and other recreational purposes is insufficient to establish express or implied dedication for a public highway.

15. The public's sporadic recreational use of routes over the Ute Mountain Ranch prior to 1996 is consistent with permissive use granted by owners of vast, remote, unfenced lands as a

neighborly accommodation and is not clear and convincing evidence of adverse use to support the establishment of a public prescriptive right-of-way.

16. Assuming any implied easement of necessity arose, it was abandoned with the designation of available public access to the Rio Grande Gorge over public roads north and south of the Ranch.

17. The evidence of sporadic use of the Ranch Road to the Rio Grande River Gorge by members of the public for recreational purposes is insufficient to establish the element of continuous use required for creating of public prescriptive easement.

18. Defendant White has failed to meet the burden of proof as to each element of public easement by prescription.

19. Plaintiff has been damaged in the amount of $_____ as a result of Defendant White's trespasses and continuous adverse threats to Plaintiff's property rights.

20. Plaintiff should be granted judgment against Defendant White for trespass and damages in the amounts set forth herein above.

21. Plaintiff should be granted judgment against Defendant White on each of White's counterclaims.

22. All Conclusions of Law implicit in the foregoing Findings of Act are adopted and incorporated herein by reference.

23. All requested Conclusions of Law which are inconsistent with the foregoing are hereby denied.

Respectfully submitted,

AHERN & HYATT, P.A.

By: _Charlotte H. Hetherington_ (signature)
for JANICE M. AHERN
P.O. Box 8980
Santa Fe, NM 87504-8980
(505) 982-9229


SIMONS, CUDDY & FRIEDMAN, LLP

By: _Charlotte H. Hetherington_ (signature)
CHARLOTTE H. HETHERINGTON
1701 Old Pecos Trail
Post Office Box 4160
Santa Fe, New Mexico 87502-4160
(505) 988-4476


CIVEROLO, GRALOW & HILL, P.A.

By: _Charlotte H. Hetherington_ (signature)
for LISA E. PULLEN
P.O. Box 887
Albuquerque, NM 87103-0887
(505) 842-8255

## CERTIFICATE OF SERVICE

I hereby certify that I did on this \_\_13th\_\_ day of November, 2000 cause a true and correct copy of the foregoing pleading to be mailed, first class mail, postage prepaid to the following counsel of record and by first class mail and certified, return receipt requested, postage prepaid to *pro se* parties:

Randolph "Duke" White, *Pro Se*  
Post Office Box 91  
Mesita, CO 81152

Janice M. Ahern, Esq.  
Ahern & & Hyatt, PA  
P. O. Box 8980  
Santa Fe, New Mexico 87504

Lisa E. Pullen, Esq.  
Richard Civerolo, Esq.  
Civerolo, Gralow & Hill, P.A.  
P. O. Box 1549  
Albuquerque, NM 87103

_____  
CHARLOTTE H. HETHERINGTON

## Exhibit A

A certain tract of land near Costilla, Taos County, New Mexico. Described as part of the Westerly portion of the Sangre De Cristo Land Grant and as Part of Sections 2, 11, 14, 23, 26, 29, 30, 32, 33 and 35, T. 1 S., R. 74 W., Colorado Baseline and as Part of Sections 3 and 4, T. 2 S., R. 74 W., Colorado Baseline and as Part of Sections 13, 24, and 25, T. 1 S., R. 75 W., Colorado Baseline and as all of Sections 3, 4, 5, 6, 7, 8, 9, 10, 15, 16, 17, 18, 19, 20, 21, 22, 27, 28 and 34, T. 1 S., R. 74 W., Colorado Baseline, of a private survey for the Costilla Estate Development Company by T. C. McPherson, as shown on a Map of Sectionizing, filed in Taos County Courthouse on May 11, 1920 and further described by metes and bounds as follows:

Beginning at the Southwest corner of the Sangre De Cristo Land Grant, a 1943 USGLO brass cap monument; thence bearing West 368.00 feet to point 1, being the Southwest corner of this Tract, on the centerline of the Rio Grande River; thence upstream along the centerline of the Rio Grande River, the following meander course,

| | |
|---|---|
| thence N. 01° 48' 00" E. | 901.00 feet to point 2; |
| thence N. 38° 00' 00" E. | 680.50 feet to point 3; |
| thence N. 19° 43' 00" W. | 926.60 feet to point 4; |
| thence N. 38° 29' 00" E. | 1,824.20 feet to point 5; |
| thence N. 64° 26' 00" E. | 2,034.90 feet to point 6; |
| thence N. 35° 45' 00" E. | 274.40 feet to point 7; |
| thence N. 04° 57' 00" E. | 627.90 feet to point 8; |
| thence N. 42° 05' 00" E. | 1,020.20 feet to point 9; |
| thence N. 12° 17' 00" E. | 983.00 feet to point 10; |
| thence N. 11° 51' 00" E. | 1,195.30 feet to point 11; |
| thence N. 65° 01' 00" E. | 420.40 feet to point 12; |
| thence N. 71° 54' 00" E. | 127.70 feet to point 13; |
| thence N. 23° 22' 00" W. | 408.30 feet to point 14; |
| thence N. 29° 19' 00" W. | 613.70 feet to point 15; |
| thence N. 00° 08' 00" E. | 657.00 feet to point 16; |
| thence N. 38° 52' 00" W. | 306.30 feet to point 17; |
| thence N. 44° 02' 00" W. | 354.60 feet to point 18; |
| thence N. 17° 56' 00" E. | 242.30 feet to point 19; |
| thence N. 36° 55' 00" E. | 372.20 feet to point 20; |
| thence N. 25° 23' 00" W. | 1,085.50 feet to point 21; |
| thence N. 10° 54' 00" E. | 1,063.20 feet to point 22; |
| thence N. 25° 30' 00" E. | 687.40 feet to point 23; |
| thence N. 28° 31' 00" E. | 302.20 feet to point 24; |
| thence N. 52° 15' 00" E. | 236.60 feet to point 25; |

| | |
|---|---|
| thence N. 10° 24' 00" W. | 1,157.30 feet to point 26; |
| thence N. 22° 55' 00" W. | 1,151.60 feet to point 27; |
| thence N. 00° 35' 00" W. | 768.20 feet to point 28; |
| thence N. 13° 31' 00" E. | 254.70 feet to point 29; |
| thence N. 00° 04' 00" W. | 855.20 feet to point 30; |
| thence N. 35° 57' 00" E. | 454.50 feet to point 31; |
| thence N. 25° 34' 00" E. | 215.40 feet to point 32; |

thence N. 22° 26' 00" W. 585.50 feet to point 33, being the Northwest corner of this Tract a point on the New Mexico and Colorado State Line;

thence leaving the centerline of the Rio Grande River and bearing along said State boundary line N. 89° 55' 00" E. 318.10 feet to the 147+70.58 mile marker a 1925 U.S. G. brass cap monument in concrete;

thence N. 89° 55' 00" E. 4,655.20 feet to the 147 mile marker a 1925 U.S.G. brass cap monument in concrete;

thence N. 89° 58' 00" E. 5,364.90 feet to the 146 mile marker, marked by a scribed stone in place;

thence N. 89° 52' 00" E. 5,279.60 feet to the 145 mile marker, marked by a two inch pipe in place;

thence N. 89° 55' 00" E. 5,280.00 feet to the 144 mile marker a 1928 U.S. G. brass cap in concrete;

thence N. 89° 42' 00" E. 1,616.15 feet to the Northeast corner of this Tract marked by a No. 5 rebar with N.M.L.S. No. 9801 plastic cap;

thence leaving the Northeast corner and leaving the New Mexico and Colorado State Line, bearing S. 00° 03' 43" E. 15,831.69 feet to a No. 5 rebar with N.M.L.S. No. 9801 plastic cap;

thence S. 00° 03' 43" E. 15,843.10 feet to the Southeast corner of this Tract a point on the South line of Township 1 South, Range 74 West, of the Colorado Baseline marked by a No. 4 rebar;

thence bearing N. 89° 59' 10" W. 3,514.63 feet to an inside corner marked by a No. 4 rebar;

thence bearing S 00° 00' 59" W. 3,651.70 feet to the Southernmost corner of the Tract a point on the Southwesterly boundary line of the Sangre De Cristo Land Grant marked by a No. 4 rebar, from whence the 5½ mile marker a 1943 USGLO brass cap monument bears S. 55° 43' 39" E. 992.92 feet distant;

thence leaving the Southernmost corner of this Tract, bearing N. 55° 43' 00" W. 1,646.30 feet to the 5 mile marker a 1943 USGLO brass cap;

thence N. 55° 31' 00" W. 132.10 feet to the closing corner between Sections 27 and 28, T. 31 N., R. 12 E., N.M.P.M., a 1943 USGLO brass cap monument;

thence N. 55° 45' 00" W. 270.30 feet to the closing corner between Sections 21 and 28, T. 31 N., R. 12 E., N.M.P.M., a 1943 USGLO brass cap monument;

thence N. 55° 32' 00" W. 2,218.50 feet to the 4½ mile marker, a 1943 USGLO brass cap monument;

thence N. 55° 36' 00" W. 2,619.30 feet to the 4 mile marker, a 1943 USGLO brass cap monument;

thence N. 55° 47' 00" W. 1,330.20 feet to the closing corner between Sections 20 and 21, T. 31 N., R. 12 E., N.M.P.M., 1943 USGLO brass cap monument;

thence N. 55° 46' 00" W. 1,328.20 feet to the 3½ mile marker, a 1943 USGLO brass cap monument;

thence N. 55° 46' 00" W. 2,005.30 feet to the closing corner between Sections 17 and 20, T. 31 N., R. 12 E., N.M.P.M., a 1943 USGLO brass cap monument;

thence N. 55° 56' W. 654.00 feet to the 3 mile marker, a 1943 USGLO brass cap monument;

thence N. 56° 19' 00" W. 2,332.50 feet to the closing corner between Sections 17 and 18, T. 31 N., R. 12 E., N.M.P.M., a 1943 USGLO brass cap monument;

thence N. 54° 40' 00" W. 338.40 feet to the 2½ mile marker, a 1943 USGLO brass cap monument;

thence N. 55° 51' 00" W. 2,670.40 feet to the 2 mile marker, a 1943 USGLO brass cap monument;

thence N. 55° 28' 00" W. 2,656.60 feet to the 1½ mile marker, a 1943 USGLO brass cap monument;

thence N. 55° 28' 00" W. 724.70 feet to the closing corner between Section 18 T. 31 N., R. 12 E., N.M.P.M., and Section 13, T. 31 N., R. 11 E., N.M.P.M., a 1943 USGLO brass cap monument;

thence N. 56° 09' 00" W. 54.20 feet to the closing corner between Sections 12 and 13, T. 31 N., R. 11 E., N.M.P.M., a 1943 USGLO brass cap monument;

thence N. 55° 23' 00" W. 1,882.20 feet to the 1 mile marker, a 1943 USGLO brass cap monument;

thence N. 55° 16' 00" W. 2,645.90 feet to the ½ mile marker, a 1943 USGLO brass cap monument;

thence N. 55° 17' 00" W. 1,858.30 feet to the closing corner between Sections 11 and 12, T. 31 N., R. 11 E., N.M.P.M., a 1943 USGLO brass cap monument;

thence N. 55° 17' 00" W. 792.70 feet to the Southwest corner of the Sangre De Cristo Land Grant and the point and place of beginning.

**Less and except:**

A tract of land near Costilla, Taos County, New Mexico; within the Sangre de Cristo Grant; described as a westerly portion of Sections 26 and 35, and an easterly portion of Sections 27 and 34 of Township 1 South, Range 74 West and a westerly portion of Section 3, Township 2 South, Range 74 West of a private survey for the Costilla Estate Development Company by T. C. McPherson; and more particularly described as follows:

Beginning at the 5 mile marker on the south boundary of the Sangre de Cristo Grant, a 1943 USGLO brass cap monument found, thence;

N 55° 25' 19" W, 132.13 feet to the closing corner between Sections 27 and 28, T. 31 N., R. 12 E., N.M.P.M., a 1943 USGLO brass cap monument found, thence;
N 55° 43' 48" W, 163.12 feet to the SW corner of this tract, a ½" rebar set, stamped LS 11770, thence;
N 00° 41' 41" W, 13119.98 feet to the NW corner of this tract, a ½" rebar set, thence;
S 89° 55' 25" E, 52580.00 feet to the NE corner of this tract, a ½" rebar set, thence;
S 00° 00' 14" E, 10560.00 feet to a ½" rebar set a fence corner, thence;
N 89° 56' 05" W, 3513.70 feet to a ½" rebar set, thence;
S 00° 04' 36" W, 3651.60 feet to the SE corner of this tract, a ½" rebar stamped LS 5213, found on the southerly boundary of the Sangre de Cristo Grant, thence;
N 55° 39' 32" W, 1646.43 feet to the Point and Place of Beginning.

Being and intended to be the same real property described in that certain deed filed for record on January 10, 1995 in Book A-223 at pages 753-757, records of Taos County, New Mexico.

Subject to the Exceptions Schedule B - Section 2 attached hereto.

chh10/5125.p
2318.001906

4

Exceptions Schedule B-Section 2

1. Terms and reservations in the patent from the United States of America to the Sangre de Cristo Grant dated December 20, 1880, recorded in Book A-11, pages 1-37, records of Taos County, New Mexico.

2. Reservation in the Rio Costilla Cooperative Livestock Association, Inc., of 1/4 mineral interest as described in Final Decree of District Court Cause No. 9911. Action: Quiet Title Suit

3. Reservations and rights described in Warranty Deed dated March 14, 1977 from Hickory Spinners, Inc. a North Carolina corporation to Louis Menyhert Ltd. # 4, a New Mexico Limited Partnership, recorded in Book A-141, pages 232-237, records of Taos County, New Mexico, as described in subsequent deeds recorded in Book A-142, pages 881-885; Book A-145, pages 336-841; Book A-159, pages 276-278; and in Book A-159, pages 279-281, all records of Taos County, New Mexico.

4. Right-of-Way Easement notarized October 14, 1977 from Public Service to Kit Carson Electric Cooperative Inc., filed for record in Book M-54, page 371, records of Taos County, New Mexico.

5. Scenic Easement dated March 14, 1980 from Public Service Company, etal to United States of America, recorded in Book M-76, pages 443-447, records of Taos County, New Mexico.

6. Roadway Grant of Easement dated April 13, 1993 by and between Steve and Maureen Johnson and Paragon Resources, Inc., recorded in Book M-158, pages 827-830, records of Taos County, New Mexico.

7. 50 foot easement along the easterly property boundary as shown on Survey Plat for Naniloa Investment Company, Ltd., a Utah Limited Partnership to Thomas Tatum, dated February 22, 1994, recorded in Cabinet C, page 155-A, records of Taos County, New Mexico.

8. Changes caused in the boundaries of the insured premises by reason of accretion or reliction.

9. Any adverse claim based upon the assertion that some portion of said land has been created by artificial means or has accreted to such portion so created.

10. Any adverse claim based upon the assertion that some portion of said land has been brought within the boundaries thereof by an avulsive movement of the Rio Grande River, or has been formed by accretion to such portion so created.

COUNTY OF TAOS ) SS
STATE OF NEW MEXICO )
I hereby certify that this instrument was filed
record on the ____ day of ____ A.D.
____ at ____ o'clock ____.
and was duly recorded in book ____
page ____ the records of Taos County.
Witness my Hand and Seal of Office
Carmen M. Medina
County Clerk, Taos County, N.M.